IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                         No. 03-20041 B

ROY BURCHAM,

    Defendant.

_____

SECOND ORDER ADOPTING REPORT AND RECOMMENDATION AND
DENYING DEFENDANT'S MOTION TO SUPPRESS
_____

On September 17, 2003, Magistrate Judge James H. Allen, pursuant to an order of reference, entered proposed findings of fact and conclusions of law with respect to the motion of the Defendant, Roy Burcham, to suppress evidence in this matter. The magistrate judge further recommended that the motion be denied. In an order entered November 26, 2003, the undersigned adopted the report and recommendation, and denied the motion to suppress. In doing so, the Court found that the magistrate judge's findings were not clearly erroneous. (*See* Order Adopting Report & Recommendation & Denying Def.'s Mot. to Suppress (Docket Entry ("D.E.") 53) at 2.) Following an appeal of the Defendant's conviction to the Sixth Circuit Court of Appeals, in which he successfully argued that this Court erred in reviewing the magistrate judge's report under a clearly erroneous standard, the appellate court remanded the case to this Court for a *de novo* review of the magistrate judge's findings.[1]

Under 28 U.S.C. § 636(b), a "*de novo* review [by the district court] of [a] magistrate judge's

---

[1] The Government conceded that the district court was required to undertake a *de novo* review and both parties jointly moved for remand. (*See* Order (D.E. 133) at 1.)

report [is] both statutorily and constitutionally required." United States v. Worley, 193 F.3d 380, 383 n.6 (6th Cir. 1999) (quoting United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985)). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* United States v. Campbell, 261 F.3d 628, 631-32 (6th Cir. 2001). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

Burcham's objections to the report focus on the magistrate judge's findings that (1) the testimony of the arresting officers was more credible than that of the Defendant and his girlfriend and (2) the girlfriend, Jennifer Kinsella, possessed the authority to consent to a search of Burcham's storage facility, where the firearms forming the basis for his arrest were discovered.[2] At the suppression hearing, the Government offered the testimony of Officer A. C. Brown of the Memphis, Tennessee Police Department, who stated that, on June 19, 2002, the department's felony response bureau was looking for the Defendant in connection with an aggravated assault that occurred the previous evening. (Tr. of Suppression Hrg. before Magistrate J. James H. Allen Aug. 28, 2003 ("Tr.") at 16.) Brown and his partner located Burcham at a gas station in Memphis, took him into custody and had him transported to the police station. (Tr. at 17-19.) He then interviewed Burcham's female companion at the time of his arrest, asking her if the Defendant had firearms in his possession. (Tr. at 19.) According to Brown, the inquiry was based on information from a

---

[2]Burcham was indicted for possession of stolen firearms and being a felon in possession of firearms. (Indictment (D.E. 1) filed February 18, 2003.)

2

confidential informant that Burcham was in possession of stolen firearms taken during a burglary. (Tr. at 20.) Brown testified that the woman, later identified as Kinsella, informed him that the Defendant had purchased some firearms and then sold them to his brother, Eddie Burcham. They were placed, she advised, in a storage locker rented by the brother and Burcham.[3] (Tr. at 20.) Kinsella further stated that she had been there with the Defendant before and had the access code, as well as a key to the unit. (Tr. at 20-21.) It was Brown's testimony that Kinsella was asked for her written consent to search the unit, which she provided, and that she accompanied him and his partner to the storage facility. (Tr. at 21-22, 31, 34.)

On cross-examination, Brown explained that he believed Kinsella had authority to consent to a search of the unit because she had the access code and a key. (Tr. at 31.) He did not recall threatening her with arrest if she did not consent to the search. (Tr. at 32-33.) Brown remembered that he told Kinsella that after officers searched the storage unit they would give her a ride home. (Tr. at 40.) She was later arrested, however, when they discovered after performing a computer check that there was an outstanding warrant for her. (Tr. at 41.) At that point, she was transported to jail. (Tr. at 41.)

Kinsella testified on behalf of the Defendant, offering a different version of the relevant events. She acknowledged directing officers to the storage unit but denied giving them the access code or the key to the unit, insisting she had neither. (Tr. at 44, 50.) Nonetheless, the officers placed her in the back of the patrol car and traveled to the U-Stor Self Storage. (Tr. at 44-45.) She

---

[3]Joe Jackson, resident manager of the U-Stor Self Storage on Summer Avenue in Memphis, testified that, pursuant to a storage unit contract, Burcham and another individual, Mandy Woods, were authorized to have access to the facility and to the specific unit rented. (Tr. at 7, 13.) The storage company did not, however, control a renter's grant of access to another person. (Tr. at 13-14.)

3

related that they already knew about the storage locker and told her she would go to jail if she did not cooperate. (Tr. at 52.) According to Kinsella, the officers obtained the access code from a piece of paper they found in Burcham's wallet. (Tr. at 51.) The key was on Burcham's keyring, which was also in the police officers' possession. (Tr. at 51.) She admitted signing the consent to search form, which she claimed occurred at the storage facility, and was aware that, in doing so, she was granting the officers permission to search the unit. (Tr. at 46, 55.) Kinsella insisted she did not believe she actually possessed the authority to consent to the search but did so only because the officers threatened to take her to jail if she refused. (Tr. at 46.) She also denied that Burcham told her he had purchased stolen firearms from an individual named Bradford Watson or that she was aware firearms belonging to anyone but Watson were stored in the unit. (Tr. at 49.) On cross-examination, Kinsella admitted that she gave a statement to officers on the night of her arrest that Burcham told her he and another individual stole the guns from Ezra Watson and that his brother Eddie was keeping them in the storage unit. (Tr. at 53.)

The Defendant offered his own testimony as well, in which he recalled the access code to the storage facility as well as the key to the unit were in his vehicle at the time of his arrest. (Tr. at 62.) His girlfriend, he insisted, had neither the code nor the key. (Tr. at 62.)

In rebuttal, the Government proffered the testimony of Memphis police officer James Kellum, who testified that he received information from a confidential informant that Burcham was in possession of stolen weapons and that they were located in a particular numbered unit at the U-Stor Self Storage on Summer Avenue. (Tr. at 72.) After Burcham was arrested and transported from the scene, Kellum asked Kinsella if she knew about the storage unit and the guns. She replied that she did. (Tr. at 72.) He stated that, "I asked her if she had access to the unit, and she said she

4

had the code. So I asked her if she would mind going with us to retrieve the two weapons that I had been told were inside. She said that she did not." (Tr. at 72-73.) Kellum filled out a consent to search form for her signature, which Kinsella executed. (Tr. at 86-87.) He denied taking Burcham's wallet into his possession and stated that the key used to open the unit was given to him by Kinsella. (Tr. at 74, 85.) Kellum informed her that he did not intend to arrest her and thanked Kinsella for her cooperation. (Tr. at 85.) According to Kellum, upon entering the storage unit lot in an unmarked vehicle, he, his partner and Kinsella were approached by the facility manager who inquired about the nature of their business. The manager advised them that he thought they would have to obtain a warrant but the officer stated that Kinsella had the code, at which point the manager withdrew. (Tr. at 75.) Kinsella opened the unit and Kellum retrieved two weapons. (Tr. at 77.) It was his recollection that, while Kinsella was seated in the car at the storage facility and the door to the unit still open, he ran a computer check in order to obtain driver's license information on her when he stumbled upon the warrant for her arrest. (Tr. at 85.)

After reviewing *de novo* the pleadings, the evidence presented at the suppression hearing, and the report and recommendation, the Court agrees with the findings and conclusions of the magistrate judge. There is no basis for finding the testimony of the officers incredible as a matter of law and the Court finds that it is not so. As for the validity of Kinsella's consent to search the storage unit, "[v]alid consent may be provided not only by the defendant but also by a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. McCauley, 548 F.3d 440, 446 (6th Cir. 2008), *pet. for cert. filed* (Feb. 3, 2009) (citing United States v. Matlock, 415 U.S. 164, 171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974)) (internal quotation marks omitted). "Common authority rests on mutual use of the

5

property by persons generally having joint access or control for most purposes." United States v. Turner, 287 F.App'x 426, 430 n.2 (6th Cir. 2008) (citing Matlock, 415 U.S. at 171 n.7, 94 S. Ct. 988) (internal quotation marks omitted). "Those who have common authority with respect to a certain object or place have assumed the risk that one of their number might permit a search." Id. (citing Matlock, 415 U.S. at 171 n.7, 94 S. Ct. 988) (internal quotation marks omitted). The consent of a party possessing apparent authority is valid "if the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." Id. n.3 (citing Illinois v. Rodriguez, 497 U.S. 177, 188, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990)) (internal quotation marks omitted). Crediting the testimony of the officers, at the time of the consent, they knew Kinsella was Burcham's girlfriend, that she had been to the storage locker before and that she had the access code and key thereto. This was sufficient for the officers to establish her authority to consent to search. Accordingly, the report and recommendation is ADOPTED, the Defendant's objection thereto is overruled, and the motion to suppress is DENIED.

IT IS SO ORDERED this 19th day of February, 2009.

                                          s/ J. DANIEL BREEN
                                          UNITED STATES DISTRICT JUDGE